**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| SHANELL I. BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    1:20cv1101 |
| | ) |
| MOTORSPORTS OF DURHAM, LLC, | ) |
| d/b/a RAGINGBULL HARLEY DAVIDSON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the undersigned United States Magistrate Judge for a recommendation on "Motorsports of Durham, LLC's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim" (Docket Entry 4) (the "Dismissal Motion"). For the reasons that follow, the Court should grant in part and deny in part the Dismissal Motion.

**BACKGROUND**

Alleging violations of her rights under "the Family and Medical Leave Act of 1996, 29 U.S.C. §§ 2601 *et seq.* ([the] 'FMLA'), and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ([the] 'ADA')," Shanell I. Bryant (the "Plaintiff"), through counsel, sued her former employer, "MotorSports of Durham, LLC d/b/a Raging Bull Harley Davidson" (the "Defendant") (Docket Entry 1 (the

"Complaint") at 1).[1]   (See id. at 1-8.)   According to the
Complaint:

"This is an action for monetary damages pursuant to the [FMLA
and ADA] to redress Defendant's unlawful employment practices
against Plaintiff including Defendant's retaliation for Plaintiff's
lawful exercise of her rights under the FMLA and unlawful
discrimination and harassment against Plaintiff due to her
disability leading to her termination." (Id., ¶ 1.) "Plaintiff
was employed by [D]efendant in a full-time capacity for
approximately two years [sic] and one-half years." (Id., ¶ 13.)
"During her tenure, Plaintiff held various positions and at the
time of her termination, Plaintiff held the position of Accounting
Officer." (Id., ¶ 14.) "Plaintiff's job duties included but were
not limited to processing invoices, preparing financial reports,
and posting payables and receivables." (Id., ¶ 15.)

"Plaintiff is disabled." (Id., ¶ 16.) "In early 2020,
Plaintiff was diagnosed with depression and anxiety." (Id., ¶ 17.)
"At all times relevant, Defendant was aware of Plaintiff's
disability." (Id., ¶ 18; accord id., ¶ 55.) "At all times
relevant to this action, Plaintiff was a qualified individual with
a disability within the meaning of the ADA. Plaintiff has an
actual disability, has a record of being disabled, and/or is

---

    1  Docket Entry page citations utilize the CM/ECF footer's
pagination.

perceived as being disabled by Defendant." (Id., ¶ 19; accord id., ¶¶ 46-47, 54.) "Plaintiff's disability impacts her major life activities including but not limited to sleeping and eating." (Id., ¶ 20.)

"Following her diagnosis, Plaintiff provided a copy of her medical documentation related to her disability to Kayleigh Turner, Payroll Manager and Carla Johnson, Office Manager." (Id., ¶ 21.) "At this time, Plaintiff requested a brief medical leave as a reasonable accommodation for her disability." (Id., ¶ 22.) "Plaintiff received no response." (Id., ¶ 23.) "Plaintiff also inquired about FMLA leave." (Id., ¶ 24.) "The following day, to discourage Plaintiff from utilizing protected medical leave, Ms. Turner *incorrectly* notified Plaintiff that protected medical leave under the FMLA was not available to her." (Id., ¶ 25 (emphasis in original).) "Plaintiff then inquired about utilizing her accrued paid time off for her absences, but Defendant did not respond." (Id., ¶ 26.) "Defendant failed to engage Plaintiff in the interactive process and had no further communications with Plaintiff about her request for reasonable accommodations." (Id., ¶ 27.) "Within days, Defendant terminated Plaintiff's employment." (Id., ¶ 28.) "Plaintiff has been damaged by Defendant's illegal conduct." (Id., ¶ 29.) "Plaintiff has had to retain the services of the undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees." (Id., ¶ 30.)

"Defendant failed to accommodate Plaintiff's disability" (id., ¶ 56), "violated the ADA by unlawfully terminating and discriminating against Plaintiff based on her disability" (id., ¶ 49), and "intentionally discriminated against Plaintiff on the basis of her disability" (id., ¶ 50). Further, "Defendant retaliated against Plaintiff for engaging in protected activity when Plaintiff requested reasonable accommodations under the ADA by terminating her employment." (Id., ¶ 61.) "Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige" (id., ¶ 57; accord id., ¶¶ 51, 63) as well as "mental and emotional distress" (id., ¶¶ 58, 64; accord id., ¶ 51).

In addition, "Plaintiff is a covered 'employee' as defined by the FMLA because she worked for Defendant for more than 12 months preceding the leave, had more than 1,250 hours of service during the 12 months preceding the leave, and worked at a location where the employer has at least 50 employees within 75 miles." (Id., ¶¶ 32, 39.) "At all times relevant to the case, Defendant is and was a covered 'employer' under the FMLA because it has more than 50 employees employed at Plaintiff's work location in 20 or more workweeks in the current calendar year or calendar year preceding the leave request." (Id., ¶¶ 33, 40; see also id., ¶ 7 ("Defendant is an employer as defined by the all [sic] laws under which this action is brought and employs the requisite number of

employees.").) "Plaintiff exercised, or attempted to exercise, her rights under the FMLA." (Id., ¶ 34; accord id., ¶ 41.) "Defendant interfered with Plaintiff's lawful exercise of her FMLA rights" (id., ¶ 35) and "retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights" (id., ¶ 42).

Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules"), contending that it "fails to satisfy the minimum pleading standards established in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." (Docket Entry 4 at 1.) Plaintiff opposed the Dismissal Motion (see Docket Entry 6) and Defendant replied (see Docket Entry 7).

## DISCUSSION

### I. Relevant Standards

A Rule 12(b)(6) motion "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). Thus, "claims lacking merit may be dealt with through summary judgment under Rule 56" rather than through a Rule 12(b)(6) motion. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). Accordingly, in reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." Coleman v. Maryland Ct. of App., 626 F.3d 187, 189 (4th Cir. 2010), aff'd sub

nom., <u>Coleman v. Court of App. of Md.</u>, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." <u>E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.</u>, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks omitted). It "do[es] not, however, accept as true a legal conclusion couched as a factual allegation" nor does it "accept unwarranted inferences, unreasonable conclusions, or arguments." <u>SD3, LLC v. Black & Decker (U.S.) Inc.</u>, 801 F.3d 412, 422 (4th Cir. 2015), <u>as amended on reh'g in part</u> (Oct. 29, 2015) (internal quotation marks omitted). The Court "can further put aside any naked assertions devoid of further factual enhancement." <u>Id.</u> (internal quotation marks omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. <u>Id.</u> "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal quotation marks omitted). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Moreover, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint" cannot "survive a Rule 12(b)(6) motion." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Nevertheless, the complaint need not contain detailed factual recitations, as long as it provides the defendant "fair notice of what the claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted). As such, although a plaintiff must allege sufficient facts "to state all the elements of her claim," Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003), she need not plead facts constituting a McDonnell Douglas prima facie case of discrimination to survive a motion to dismiss, Swierkiewicz, 534 U.S. at 514-15.

## II. ADA Claims

### A. The ADA

As the United States Court of Appeals for the Fourth Circuit recently explained:

> The [ADA] prohibits employers from "discriminat[ing]" against "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a)-(b). An employer unlawfully discriminates against an employee by,

among other things, failing to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5)(A); *see also id.* § 12112(b)(1)-(7). A "reasonable accommodation" may involve "job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." *Id.* § 12111(9)(B). The ADA also prohibits retaliation against employees who seek the Act's statutory protections. 42 U.S.C. § 12203(a)-(b); *see Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 357 (2013).

When a plaintiff alleges that her employer unlawfully discriminated or retaliated against her in violation of the ADA, she can prove her claim through direct and indirect evidence. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572, 577 (4th Cir. 2015). Otherwise, the plaintiff may proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), a familiar way to resolve claims arising under federal employment discrimination laws, *see Jacobs*, 780 F.3d at 572, 577 (applying the framework to a claim under the ADA).

*Laird v. Fairfax Cnty.*, 978 F.3d 887, 892 (4th Cir. 2020) (footnotes and parallel citations omitted) (certain brackets in original).[2]

The Fourth Circuit further has held that

[t]he requirements to set forth a prima facie case under the ADA are similar for both discrimination claims and retaliation claims. For a discrimination claim, the plaintiff must prove that: (1) she is disabled; (2) she was a qualified individual; and (3) she suffered an adverse employment action based on her disability. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). For a retaliation

---

2 "The ADA defines a 'qualified individual' to mean 'an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that [the] individual holds or desires.'" *Id.* at 892 n.2 (brackets in original) (quoting 42 U.S.C. § 12111(8)).

claim, the plaintiff must prove that: (1) she has engaged in protected conduct; (2) she suffered an adverse action after engaging in the protected conduct; and (3) there was a causal link between the protected conduct and the adverse action. *See Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Thus, in both cases, the plaintiff must show that: (1) she is protected; (2) she suffered an adverse action; and (3) there is a causal link between her protected status and the adverse action.

Laird, 978 F.3d at 892 n.4.[3]

───────────────

3 As the Fourth Circuit has observed:

What qualifies as an "adverse action" differs slightly depending on whether the claim is for unlawful discrimination or retaliation. For a discrimination claim, the plaintiff must show that her employer took an action that adversely "affect[ed] *employment* or alter[ed] the conditions of the *workplace*." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006) (emphasis added). But for a retaliation claim, the plaintiff is not so limited since "[t]he scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 67. However, although the *scope* of actions that qualify as an adverse action may differ, the required *effect* or adversity from such actions is described in very similar language for both claims. An alleged retaliatory action must be "materially adverse," meaning that the plaintiff must show that the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal citations omitted). In other words, the harm must be a "'*significant*' *detriment*," not "relatively insubstantial or 'trivial.'" *Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015) (quoting *Burlington*, 548 U.S. at 68) (emphasis added). Similarly, for a discrimination claim, the adverse action must result in "some *significant detrimental effect*," requiring more than a position that is "less appealing" to the plaintiff. *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (emphasis added). Ultimately, retaliation claims and discrimination claims require fact-specific analysis that "depends on the particular circumstances of the case." *Adams*, 789 F.3d at 431. Setting aside the difference in

(continued...)

"Protected activity [under the ADA] includes the right . . . to request an accommodation." Thomas v. City of Annapolis, No. 18-2148, 2021 WL 943700, at *7 (4th Cir. Mar. 12, 2021) (analyzing plaintiff's "retaliation claims under Title VII, the ADA, and 42 U.S.C. § 1983");[4] see also, e.g., Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 706 (4th Cir. 2001) ("The record shows a termination and shows protected activity — [the plaintiff's] November 4 request for an accommodation [under the ADA]."). Moreover, termination of employment constitutes both an adverse action and an adverse employment action under the ADA. See, e.g., Haulbrook, 252 F.3d at 706 (treating termination as "adverse action"); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998) (observing that employer's discharge of plaintiff "undisputed[ly constituted] an adverse employment action . . . against [plaintiff]").

---

3(...continued)
scope, both claims share a "common element": an *adverse* action, meaning some action that results in some "'significant' detriment" to the employee. *Id.*; *see Holland*, 487 F.3d at 219.

Laird, 978 F.3d at 893 (emphasis and brackets in original) (parallel citations and footnote omitted).

4  "[B]ecause the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose — the prohibition of illegal discrimination in employment — courts have routinely used Title VII precedent in ADA cases." Fox v. General Motors Corp., 247 F.3d 169, 176 (4th Cir. 2001).

Further, "establishing a 'causal relationship' at the prima facie stage isn't an onerous burden." Thomas, 2021 WL 943700, at *7. Rather, even at the summary judgment stage, close temporal proximity between the protected activity and adverse action can suffice. See Jacobs, 780 F.3d at 575 (citing Haulbrook, 252 F.3d at 706); see also id. ("[The plaintiff] was fired just three weeks after sending her e-mail disclosing her disability and requesting an accommodation. Such close temporal proximity weighs heavily in favor of finding a genuine dispute as to causation."). "Of course, at th[e motion to dismiss] stage, [courts] are not concerned with whether a genuine dispute exists so long as the facts alleged, taken as true, would support a reasonable inference of causation." Miller v. Maryland Dep't of Nat. Res., 813 F. App'x 869, 879 (4th Cir. 2020) ("Miller"); see also id. ("Taking the facts as pled in the First Amended Complaint, Appellant's employment was terminated just one day short of four weeks after his last accommodation request. At this stage, [the Fourth Circuit was] of the view that the temporal proximity is sufficiently close to 'weigh heavily' in support of concluding that Appellant pled facts establishing causation."); see also Thomas, 2021 WL 943700, at *7 (explaining that Fourth Circuit "ha[s] previously held that four months between the protected activity and adverse employment action is sufficient to establish a causal connection at the prima facie stage," and concluding that "[t]he temporal proximity [of 20 days] between [the

plaintiff's] filing of discrimination charges and being placed on unpaid leave, regardless of why the adverse action occurred, is enough to carry [his] initial burden").

Notably, though, to pursue a claim for discrimination or failure to accommodate under the ADA, a plaintiff must "show[] that she was 'disabled' within the meaning of the ADA." Rhoads v. F.D.I.C., 257 F.3d 373, 387 (4th Cir. 2001). The ADA defines "disability" as, inter alia, "[a] physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A); see also 29 C.F.R. § 1630.2(j)(1)(ii) (defining impairment as disability under ADA "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population").[5] An "ADA retaliation claim, however, d[oes] not require proof of a disability." Rhoads, 257 F.3d at 380.

## B. ADA Discrimination and Accommodation Claims

Defendant moves to dismiss Plaintiff's ADA discrimination and failure to accommodate claims on the grounds that, inter alia, the

---

[5] "In September 2008, Congress broadened the definition of 'disability' by enacting the ADA Amendments Act of 2008" (the "ADAA"), which "was intended to make it easier for people with disabilities to obtain protection under the ADA." Jacobs, 780 F.3d at 572 (certain internal quotation marks omitted). Under the ADAA modifications, "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of th[e ADA]." 29 C.F.R. § 1630.2(j)(1)(ii).

Complaint does not plead a qualifying disability. (See Docket Entry 5 at 11-16.) In response, Plaintiff asserts that her "disability-based discrimination and failure to accommodate claims are well-pled" (Docket Entry 6 at 11) because she "pleads she is disabled and has been diagnosed with depression and anxiety" and also "pleads her disability impacts her major life activities including but not limited to sleeping and eating" (id. at 10).[6] Defendant's position should prevail.

As relevant here, the Complaint alleges that, "[i]n early 2020, Plaintiff was diagnosed with depression and anxiety" (Docket Entry 1, ¶ 17) and that "Plaintiff's disability impacts her major life activities including but not limited to sleeping and eating" (id., ¶ 20). The Complaint provides no factual development regarding the "impact[]" of Plaintiff's depression and anxiety on her eating or sleeping (or any other major life activity). (See generally Docket Entry 1.) Although sleeping and eating constitute major life activities, see 42 U.S.C. § 12102(2)(A), Plaintiff's

_____

    6 Plaintiff further maintains that "[s]he continues to plead that at all times relevant, Defendant was aware of her disability and Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant." (Id. (citing Docket Entry 1, ¶¶ 18, 19).) These assertions constitute "exactly the type of conclusory allegation[s] devoid of any reference to actual events that will not survive a motion to dismiss," Miller, 813 F. App'x at 876. See also id. (explaining that "Appellant's claim that the district court was required to infer that his 'difficulties' were substantial limitations — merely because he defined 'disability' and said he had one — clearly fails").

13

conclusory allegation that her depression and anxiety "impact[]" such activities fails to plausibly allege that "[s]he was substantially limited as a result of [her depression and anxiety]," Miller, 813 F. App'x at 875. For instance, the Fourth Circuit has held that allegations that a neck "'injury caused [a plaintiff] difficulties with lifting, running, sleeping, driving, and pulling and turning his neck," id. (internal quotation marks omitted),[7] "[we]re inadequate to satisfy the pleading standard," id. at 876. As the Fourth Circuit explained, "[alt]hough a substantial limitation need not be severe, [the plaintiff's] claim that he suffered 'difficulties' lifting and sleeping falls well short of alleging he was limited 'as compared to most people in the general population.'" Id. (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). The same principle applies here, with even more force given that the Miller plaintiff at least alleged that his disability caused him "'difficulties,'" id., but Plaintiff does not even plead that her asserted disability negatively impacted her (see generally Docket Entry 1). Accordingly, the Court should grant Defendant's request to dismiss Plaintiff's ADA discrimination and accommodation claims. See Miller, 813 F. App'x at 876; Rhoads, 257 F.3d at 380.

---

    7  The neck injury allegedly caused herniated discs and a cervical herniation.  See id.

## C.  ADA Retaliation Claim

Defendant also argues for dismissal of Plaintiff's ADA retaliation claim, contending that she failed to "establish protected activity" (Docket Entry 5 at 20) and causation. (See id. at 18-22.)  At this stage of the proceedings, Defendant's arguments fall short.

First, relying primarily on decisions involving summary judgment, Defendant maintains that

> Plaintiff cannot establish that her request for "brief medical leave" constitutes an actual request for accommodation under the ADA, as Plaintiff fails to allege plausible facts demonstrating the leave was related to an actual disability, would be "reasonable" under the circumstances, would enable her to perform the essential functions of her job, and fails to meet the "burden of providing to the employer the information necessary for making the reasonable accommodation decision."

(Id. at 19 (quoting Jeffries v. Gaylord Ent., Civ. No. 10-691, 2013 U.S. Dist. LEXIS 43619, at *11 (D. Md. Mar. 26, 2013)); see also id. at 11-18.)  This contention rests on the notion that Plaintiff failed to establish prima facie cases of disability discrimination (see id. at 11-12) and failure to accommodate (see id. at 15).

However, Plaintiff "was [not] required to make [such] showing at the pleading stage.  Importantly, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination . . . to survive [a] motion to dismiss.'"  Miller, 813 F. App'x at 878 (ellipsis and final set of brackets in original) (quoting Swierkiewicz, 534 U.S. at 515).  "The Swierkiewicz Court recognized

15

that it would 'not [be] appropriate to require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* frame-work does not apply in every employment discrimination case.'" <u>Id.</u> (brackets in original). Moreover, as the Fourth Circuit has recognized, "a prima facie case may require demonstrating more elements than are otherwise required to state a claim for relief." <u>Id.</u> (internal quotation marks omitted). "Thus, rather than pleading all elements of a prima facie case, a plaintiff need only plead facts to satisfy the elements of a cause of action created by th[e] statute." <u>Id.</u> (internal quotation marks omitted) (brackets in original).

At this stage of the proceedings, Plaintiff's Complaint sufficiently alleges her engagement in protected activity. Specifically, it asserts that, following her depression and anxiety diagnosis, she "provided a copy of her medical documentation related to her disability to [Defendant's payroll and office managers]" and "requested a brief medical leave . . . for her disability." (Docket Entry 1, ¶¶ 21-22; <u>see</u> <u>id.</u>, ¶ 17.) "For purposes of the ADA, 'reasonable accommodations' may comprise job restructuring, part-time or modified work schedules, and permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment . . . ." <u>Wilson v. Dollar Gen. Corp.</u>, 717 F.3d 337, 344-45 (4th Cir. 2013) (citation and certain internal quotation marks omitted) (ellipsis in original). Moreover,

"request[ing ]an accommodation" can constitute protected activity under the ADA. Haulbrook, 252 F.3d at 706; accord, e.g., Miller, 813 F. App'x at 877.

Defendant counters, however, that "Plaintiff also cannot establish protected activity because she fails to demonstrate 'a good faith, objectively reasonable belief that she [is] disabled within the meaning of the ADA.'" (Docket Entry 5 at 20 (brackets in original) (quoting Shore v. Martin, No. 1:99cv543, 2000 U.S. Dist. LEXIS 23107, at *27 (M.D.N.C. Sept. 11, 2000)).) According to Defendant, "[t]his [conclusion] stems from Plaintiff's failure to allege plausible factual material describing her medical condition," which obliges "the Court [to] find Plaintiff failed to sufficiently plead the existence of a disabling condition or her status as a qualified individual with a disability." (Id.)

As a preliminary matter, the case quoted by Defendant involved a motion for summary judgment, not a motion to dismiss, see, e.g., Shore, 2000 U.S. Dist. LEXIS 23107, at *1, and found that the plaintiff's retaliation claim failed because, inter alia, she did "not produce[] any evidence that, at the time she requested a transfer, she believed that she was disabled, much less that such belief was objectively reasonable," id. at *27. In any event, this argument cannot succeed because the Fourth Circuit not only has held that a plaintiff need not qualify as disabled to pursue an ADA retaliation claim, see Rhoads, 257 F.3d at 380, but also has held

that a plaintiff's ADA retaliation claim, based on the protected
activity of requesting an accommodation, may survive Rule 12(b)(6)
dismissal even though the plaintiff's actual-disability-based ADA
discrimination claim does not plausibly allege a qualifying
disability, necessitating its dismissal, see Miller, 813 F. App'x
at 875-79; see also, e.g., Okyere v. John Bean Techs. Corp., No.
5:20-cv-190, 2020 WL 7625237, at *10 (E.D.N.C. Dec. 22, 2020)
(concluding that, for purposes of retaliation claim, plaintiff's
accommodation "request may be considered protected activity even
though plaintiff has failed to adequately allege that he was
disabled under the ADA").

Defendant further argues that Plaintiff fails to adequately
allege causation. (See Docket Entry 5 at 21.)[8] Specifically,
Defendant contends that, "in the Fourth Circuit, knowledge of the
protected activity is necessary to establish causation" (id.
(internal quotation marks omitted)) and thus that "[i]dentifying
the decisionmaker in a retaliation claim is crucial because by

---

[8] Defendant also asserts that, "to the extent her termination
resulted from the failure of Defendant to provide leave, Plaintiff
fails to allege any adverse job action, as a mere failure to
accommodate cannot serve as the basis for a retaliation claim."
(Id. at 20.) According to Defendant, "Plaintiff's Complaint
alleges her employment ended because she did not receive the
alleged 'leave' she requested." (Id.) This argument lacks merit.
Construed in the light most favorable to Plaintiff, the Complaint
alleges that Defendant fired Plaintiff within days of her
disclosure of a disability and her request for leave; it contains
no allegations suggesting that the denial of her request for leave
itself resulted in the ending of her employment. (See Docket Entry
1, ¶¶ 17-28.)

definition, an employer cannot take action because of a factor of which it is unaware" (id. (internal quotation marks omitted)).  In Defendant's view, "[t]he Complaint fails to allege plausible facts establishing a causal connection between Plaintiff's 'request for accommodation' and termination because Plaintiff fails to include any allegations regarding the decisionmaker(s) who terminated her employment."  (Id.)

However, a plaintiff need not plead knowledge at the motion to dismiss stage, as "the knowledge requirement . . . is specifically regarded as an element of a prima facie case."  Miller, 813 F. App'x at 878.  "The statute does not require proof of this element at the pleading stage; it only requires some facts supporting a 'reasonable inference' of causation."  Id. (holding that district court erred in dismissing retaliation claim because "Appellant did not identify who made the decision to terminate him, or whether that person had knowledge of his requests for accommodations").  Here, Plaintiff asserts that, within days of informing Defendant's payroll and office managers of her depression and anxiety and requesting leave from them, Defendant terminated Plaintiff's employment.  (See Docket Entry 1, ¶¶ 17, 21-28.)  Those allegations sufficiently support a "reasonable interference" of causation to withstand Rule 12(b)(6) dismissal.  See, e.g., Miller, 813 F. App'x at 879 (explaining that, at Rule 12(b)(6) stage, courts "are not concerned with whether a genuine dispute exists so long as the

facts alleged, taken as true, would support a reasonable inference of causation," and concluding that, where complaint alleged plaintiff's "employment was terminated just one day short of four weeks after his last accommodation request[,] . . . . the temporal proximity is sufficiently close to 'weigh heavily' in support of concluding that [the plaintiff] pled facts establishing causation").

In sum, at this stage of the proceedings, Defendant's arguments do not justify dismissal of Plaintiff's ADA retaliation claim. The Court should therefore deny Defendant's request to dismiss this claim.

### III. FMLA Claims

### A. The FMLA

As the Fourth Circuit has explained:

> The FMLA is intended "to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons." *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999) (citing 29 U.S.C. § 2601(b)). It entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons, *see* 29 U.S.C. § 2612(a)(1), and ensures that these employees will be restored to their same or an equivalent position upon returning to work, *see id.* § 2614(a)(1). A qualifying medical reason is defined as "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). A "serious health condition" is defined, in part, as an illness or impairment that requires continuing treatment by a health care provider, *see id.* § 2611(11)(B), and that also involves a "period of incapacity requiring absence from

work . . . of more than three calendar days," 29 C.F.R.
§ 825.114(a)(2) (1993).

<u>Rhoads</u>, 257 F.3d at 381-82 (footnote omitted) (ellipsis in

original).[9]

"The FMLA provides proscriptive rights 'that protect employees

from discrimination or retaliation for exercising their substantive

rights under the FMLA.'" <u>Vannoy v. Federal Rsrv. Bank of Richmond</u>,

827 F.3d 296, 304 (4th Cir. 2016). As such, Section 2615 of the

FMLA

> prohibits two kinds of conduct: (1) an employer cannot
> "interfere with, restrain, or deny the exercise of or the
> attempt to exercise, any right provided under this
> subchapter," *id.* § 2615(a)(1); and (2) an employer cannot
> "discharge or in any other manner discriminate against
> any individual for opposing any practice made unlawful by
> this subchapter," *id.* § 2615(a)(2). The first
> prohibition gives rise to "'interference' or
> 'entitlement' claims." *Waag v. Sotera Defense Solutions,
> Inc.*, 857 F.3d 179, 186 (4th Cir. 2017) (quoting *Yashenko
> v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 546 (4th
> Cir. 2006)). The second prohibits retaliation or
> discrimination for opposing unlawful practices. *See id.*

<u>Fry v. Rand Constr. Corp.</u>, 964 F.3d 239, 244 (4th Cir. 2020)

(parallel citations omitted), <u>cert. denied</u>, No. 20-861, 2021 WL

1725175, __ S. Ct. __ (U.S. May 3, 2021). "In both contexts, a

plaintiff can either (1) produce direct and indirect evidence of

retaliatory animus or (2) demonstrate intent by circumstantial

---

9 "An 'eligible employee' is one 'who has been employed for
at least 12 months by the employer with respect to whom leave is
requested . . . for at least 1,250 hours of service with such
employer during the previous 12 month period.'" <u>Id.</u> at 381 n.6
(ellipsis in original) (quoting 29 U.S.C. § 2611(2)(A)).

evidence, which [courts] evaluate under the framework established for Title VII cases in *McDonnell Douglas*." Id. (internal quotation marks omitted) (citing Waaq, 857 F.3d at 191; Laing v. Federal Express Corp., 703 F.3d 713, 717 (4th Cir. 2013); and Yashenko, 446 F.3d at 550-51).[10]

An FMLA retaliation plaintiff proceeding under the McDonnell Douglas framework "must first make a prima facie showing that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko, 446 F.3d at 551 (internal quotation marks omitted). "Once the plaintiff proffers evidence establishing his prima facie case, and the employer offers a non-retaliatory reason of the adverse action, the plaintiff 'bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation.'" Vannoy, 827 F.3d at 304 (quoting Yashenko, 446 F.3d at 551).

---

10  "[S]ince 2006, [the Fourth Circuit] has held that claims of retaliation for taking leave arise under § 2615(a)(2) (opposing unlawful practices)." Id. at 245.  "[The Fourth Circuit] ha[s] read that subsection broadly to protect not just employees who 'oppose' unlawful practices, § 2615(a)(2), but also to protect 'employees from discrimination or retaliation *for exercising their substantive rights under the FMLA.*'"  Id. (emphasis in original) (quoting Yashenko, 446 F.3d at 546).  However, several other courts of appeals "find these claims fall under § 2615(a)(1)," id., and a post-Yashenko Department of Labor regulation similarly "suggests that claims for retaliation for taking leave arise under § 2615(a)(1)," id., a subsection whose prohibitions the Fourth Circuit has described as "'prescriptive,' meaning the employer's intent is irrelevant," id. at 246 n.3.

Finally, to succeed on an FMLA interference claim, a plaintiff must "prove that she was afflicted with an FMLA-qualifying condition, because otherwise she did not have any right under the Act with which her employer could have interfered." Rhoads, 257 F.3d at 384.

**B. FMLA Covered Employer Challenge**

As an initial matter, Defendant urges dismissal of Plaintiff's FMLA claims on the grounds that "Plaintiff omits plausible allegations of fact demonstrating Defendant is a covered employer under the FMLA." (Docket Entry 5 at 8.) In particular, Defendant asserts that "Plaintiff offers an unadorned legal conclusion – 'Defendant is and was a covered "employer" under the FMLA because it has more than 50 employees employed at Plaintiff's work location in 20 or more workweeks in the current calendar year or calendar year preceding the leave request' – and the Court cannot infer that Defendant is a covered employer based on an unadorned legal conclusion alone." (Id. at 8-9 (citing Docket Entry 1, ¶ 33).) This argument misses the mark.

Under the FMLA, a covered employer "is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 C.F.R. § 825.104(a). "For Plaintiff to plead a plausible claim against Defendant for FMLA violations, then,

Plaintiff must sufficiently allege that Defendant is a covered employer under the FMLA's standards. Plaintiff has done so here." Whitt v. High Voltage, Inc., No. CV 3:17-2532, 2017 WL 5707544, at *2 (S.D. W. Va. Nov. 27, 2017) (finding sufficient allegation that "'Defendant is and was a covered employer under the FMLA, and employs 50 or more people within 75 miles of the location where Plaintiff was employed'"). Here, the Complaint alleges that Defendant "ha[d] more than 50 employees employed at Plaintiff's work location" in the relevant period (Docket Entry 1, ¶ 33) and that Plaintiff "worked at a location where [Defendant] has at least 50 employees within 75 miles" (id., ¶ 32). "Accepting th[ese] factual allegation[s] as true, as is required, the Court [should] find[] that Plaintiff has provided enough facts that [the FMLA applicability aspect of her] claim is plausible on its face," Whitt, 2017 WL 5707544, at *2 (emphasis added).

### C. FMLA Interference Claim

Defendant next urges dismissal of Plaintiff's FMLA interference claim on the grounds that the Complaint fails to allege "a serious health condition as defined by the FMLA." (Docket Entry 5 at 6.) In response, Plaintiff maintains that she "has established . . . that she has a serious health condition as she pled she is disabled and in early 2020 Plaintiff was diagnosed with depression and anxiety. Plaintiff further pled her disability impacts her major life activities including but not limited to

sleeping and eating." (Docket Entry 6 at 6 (citation omitted) (citing Docket Entry 1, ¶¶ 16, 17, 20).) These assertions do not plausibly allege that Plaintiff "suffered from an FMLA-qualifying 'serious health condition.'" Rhoads, 257 F.3d at 380.

The FMLA defines a "'serious health condition'" as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Although "the FMLA does not define" the term "continuing treatment," Miller v. AT & T Corp., 250 F.3d 820, 825 (4th Cir. 2001) (internal quotation marks omitted), FMLA regulations define "continuing treatment" as, inter alia:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.115(a).[11]

As relevant here,[12] continuing treatment additionally covers:

[a]ny period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

(1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider;

(2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(3) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c).[13]

---

11 "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b).

12 Continuing treatment also encompasses (i) "[p]regnancy or prenatal care," 29 C.F.R. § 825.115(b); (ii) "[p]ermanent or long-term conditions," defined as "[a] period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective," such as "Alzheimer's, a severe stroke, or the terminal stages of a disease," 29 C.F.R. § 825.115(d); and (iii) absences to receive multiple treatments for certain qualifying conditions, 29 C.F.R. § 825.115(e). The Complaint contains no allegations suggesting that any of these criteria apply to Plaintiff. (See generally Docket Entry 1.)

13 Absences related to this subsection "qualify for FMLA leave even though the employee or the covered family member does not receive treatment from a health care provider during the absence, and even if the absence does not last more than three consecutive, full calendar days." 29 C.F.R. § 825.115(f). "For example, an employee with asthma may be unable to report for work due to the onset of an asthma attack or because the employee's

(continued...)

The Complaint's only _factual_ allegations regarding Plaintiff's medical condition state that, "[i]n early 2020, Plaintiff was diagnosed with depression and anxiety" (Docket Entry 1, ¶ 17), which "impact[] her major life activities including but not limited to sleeping and eating" (_id._, ¶ 20), as well as that, "[f]ollowing her diagnosis, Plaintiff provided a copy of her medical documentation related to her disability to Kayleigh Turner, Payroll Manager and Carla Johnson, Office Manager" (_id._, ¶ 21) and "requested a brief medical leave" (_id._, ¶ 22). Even drawing all reasonable inferences in Plaintiff's favor, these assertions fail to plausibly allege that Plaintiff suffered from (i) a "chronic serious health condition," 29 C.F.R. § 825.115(c), (ii) an illness that incapacitates her for "more than three consecutive, full calendar days," 29 C.F.R. § 825.115(a), or (iii) an ailment requiring "inpatient care in a hospital, hospice, or residential medical care facility," 29 U.S.C. § 2611(11). Accordingly, the Court should dismiss Plaintiff's FMLA interference claim. See Rhoads, 257 F.3d at 384.

### D. FMLA Retaliation Claim

Finally, Defendant moves to dismiss Plaintiff's FMLA retaliation claim on the grounds that, _inter alia_, the Complaint does not plausibly allege protected activity. (_See_ Docket Entry 5

---

13(...continued)
health care provider has advised the employee to stay home when the pollen count exceeds a certain level." _Id._

at 9-10.) More specifically, Defendant asserts that "Plaintiff cannot establish the existence of the mandatory protected activity element of the retaliation claim" because "the Complaint lacks plausible allegations of fact demonstrating her entitlement to leave under the FMLA." (Id. at 10.) In particular, Defendant emphasizes that the Complaint fails to "demonstrate incapacitation within the meaning of the [FMLA]." (Id.)

In response, Plaintiff concedes that she must demonstrate her entitlement to FMLA leave, but asserts that she sufficiently alleged that she suffers from a serious health condition qualifying her for such leave. (Docket Entry 6 at 4-7.) In so arguing, Plaintiff does not address Defendant's contention that the Complaint lacks factual allegations plausibly showing incapacitation under the FMLA, as required for a qualifying serious health condition. (See id. at 4-8.) By failing to respond to Defendant's incapacitation argument, Plaintiff effectively concedes both her obligation and failure to allege incapacitation under the FMLA. See, e.g., Kinetic Concepts, Inc. v. Convatec Inc., No. 1:08cv918, 2010 WL 1667285, at *6-9 (M.D.N.C. Apr. 23, 2010) (explaining that party concedes opponent's argument by failing to address it in party's response and collecting cases). Moreover, as discussed above, the Complaint does not plausibly allege a qualifying serious health condition under the FMLA. Under the

circumstances, the Court should grant Defendant's request to dismiss Plaintiff's FMLA retaliation claim.[14]

---

14    Plaintiff maintains that she "engaged in protected activity when she provided a copy of her medical documentation related to her disability to Kayleigh Turner, Payroll Manager and Carla Johnson, Office Manager" (Docket Entry 6 at 7), after which she "requested a brief medical leave . . . and inquired about FMLA leave" (id.).  "[G]iving an employer notice of intent to take FMLA leave, at least where the employee qualifies for that leave, is protected activity for purposes of an FMLA retaliation claim," Wehrley v. American Fam. Mut. Ins. Co., 513 F. App'x 733, 742-43 (10th Cir. 2013), and "[r]equesting leave is also an FMLA-protected right, for which retaliation conceivably could be wrongful even where the leave itself was unprotected," Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 793 (1st Cir. 2011) (citation omitted).  However, "it is not clear that one not entitled to take FMLA leave 'avails himself of a protected right' when requesting to take such leave." McArdle v. Town of Dracut/Dracut Pub. Schs., 732 F.3d 29, 35-36 (1st Cir. 2013).  As the United States Court of Appeals for the First Circuit has explained:

> The case law is both split and not fully developed regarding such an argument. *Compare Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1253 (11th Cir. 2004) (holding that eligibility is a prerequisite for a retaliation claim), *with Johnson v. Dollar Gen.*, 880 F. Supp. 2d 967, 991 (N.D. Iowa 2012) (*criticizing Walker*); *see also Wilkins v. Packerware Corp.*, 260 Fed. Appx. 98, 102-103 (10th Cir. 2008) (surveying cases and describing the issue as "contestable").

> We are not convinced that an employee who is ineligible for FMLA leave can never bring a retaliation claim.  There are many reasons why an employee will not know until inquiring whether he is eligible for any particular right available under the Act.  The statute prohibits employer interference with both the exercise of rights provided under the FMLA and "the attempt to exercise any [such] right."  29 U.S.C. § 2615(a)(1).  There is no requirement that the attempt be successful.  It would seem too, that firing an employee for asking would also frustrate the aims of the Act even if the inquiring employee turns out to be ineligible.  Such an "ask at your peril" approach could deter employees,

(continued...)

## IV. Amendment Issue

As a final matter, in the last sentence of her opposition to the Dismissal Motion, Plaintiff "alternative[ly] . . . requests this Court grant her leave to amend her Complaint." (Docket Entry 6 at 12.)  Defendant objects to this request, arguing that it "is an impermissible method for seeking leave to amend and should not be allowed to enable Plaintiff to revised [sic] her pleading now that she is on notice of its deficiencies." (Docket Entry 7 at 11.)  As Defendant correctly notes, this "informal request" (id. (internal quotation marks omitted)) does not constitute a valid Rule 15 motion to amend.  See, e.g., M.D.N.C. LR 7.3(a) ("Each motion shall be set out in a separate pleading.").  However, because Plaintiff conceivably could cure her pleading deficiencies with additional factual allegations, the Court should dismiss

_____

14(...continued)
including eligible employees uncertain of the extent of their rights, from taking the first step necessary to exercise their rights.

McArdle, 732 F.3d at 36.  In addition, the fact that both FMLA and ADA retaliation claims "are analogous to those derived under Title VII," Yashenko, 446 F.3d at 551 (FMLA retaliation claim); accord Laird, 978 F.3d at 892-93 & n.5 (ADA retaliation claim), provides some support for finding that an FMLA retaliation plaintiff need not establish an FMLA-qualifying health condition, at least at the motion to dismiss stage.  See, e.g., Miller, 813 F. App'x at 875-79 (affirming dismissal of ADA actual disability claim for failure to allege qualifying disability but concluding ADA retaliation claim for requesting accommodation survived Rule 12(b)(6) dismissal).  However, in light of Plaintiff's concession, and in the absence of any arguments regarding the ability to plead an FMLA retaliation claim absent allegations illustrating a qualifying serious health condition, the Court need not resolve this issue.

Plaintiff's claims without prejudice, so that she may properly move to amend her Complaint. See, e.g., Misel v. Green Tree Servicing, LLC, 782 F. Supp. 2d 171, 178 (E.D.N.C. 2011) ("Generally, where a defect in the complaint is curable, the court should grant the dismissal without prejudice."); see also, e.g., Miller, 813 F. App'x at 880 (holding that plaintiff should be permitted to amend complaint on remand and noting that proposed amended complaints "also allege additional facts which may support [plaintiff's dismissed] claims for failure to accommodate and unlawful termination based on actual disability").

## CONCLUSION

The Complaint does not plausibly allege qualifying health conditions under the ADA and FMLA, but Plaintiff's ADA retaliation allegations suffice to survive Rule 12(b)(6) dismissal.

**IT IS THEREFORE RECOMMENDED** that the Dismissal Motion (Docket Entry 4) be granted in part and denied in part as follows: Plaintiff's ADA retaliation claim be allowed to proceed and all other claims be dismissed without prejudice.

This 29th day of June, 2021.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
